*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANTONIO HAMMOCK,

        Plaintiff,

and

C-SPINE ORTHOPEDICS, PLLC,

        Intervening Plaintiff-Appellant,

v

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN and FARM BUREAU
GENERAL INSURANCE COMPANY OF
MICHIGAN,

        Defendants-Appellees.

UNPUBLISHED
July 07, 2026
10:27 AM

No. 363495
Macomb Circuit Court
LC No. 2020-002102-NF

ON REMAND

Before: RICK, P.J., and PATEL and GARRETT, JJ.

PER CURIAM.

This matter returns to us on remand in light of our Supreme Court's recent ruling in *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 165537, 165538, and 165964). Having reviewed the matter in full, we vacate and remand.

## I. FACTUAL BACKGROUND

When this case was initially before us, we summarized the pertinent facts as follows:

    Intervening plaintiff C-Spine Orthopedics, PLLC (C-Spine) appeals as of right, challenging an order granting summary disposition in favor of defendant

Farm Bureau General Insurance Company of Michigan in this case arising under the no-fault act.[1] We reverse and remand.

> Plaintiff, Antonio Hammock, filed a lawsuit for no-fault personal injury protection (PIP) insurance benefits against defendant following an alleged automobile accident. C-Spine intervened in the lawsuit as a purported assignee of Hammock's rights. C-Spine had treated Hammock's injuries, leading to an outstanding balance of $450,677.57. Although C-Spine had entered into numerous bulk purchase and sale agreements for accounts receivable with multiple different factoring companies—of which Hammock's were included—at a later date, C-Spine agreed to counter-assignments of Hammock's claims with the same factoring companies.
>
> Subsequently, defendant filed a motion for summary disposition as to C-Spine's claims, arguing that the case should be dismissed under MCR 2.116(C)(8) and (C)(10) because C-Spine was not a real party in interest, and therefore, had no standing to bring the suit. The trial court agreed with defendant and granted the motion, dismissing the case. C-Spine now appeals as of right. [*C-Spine Orthopedics v Farm Bureau Mutual Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued February 1, 2024 (Docket No. 363495), pp 1-2.]

---

[1] We refer to Farm Bureau General Insurance Company of Michigan as "defendant." Farm Bureau Mutual Insurance Company of Michigan was never formally dismissed from the case, but was not a proper defendant according to defendant's answer to C-Spine's complaint, and did not participate in the case in any manner.

---

On appeal, relying exclusively on this Court's published opinion in *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, 344 Mich App 626; 2 NW3d 71 (2022), this Court held that the trial court erred when it granted defendant's motion for summary disposition. *C-Spine*, unpub op at 4. This Court found that, because C-Spine had statutory standing under MCL 500.3112, it was the real party in interest, despite assignments to third parties. *Id*.

Defendant thereafter sought leave to appeal to our Supreme Court. In lieu of granting leave to appeal, and having previously held the matter in abeyance pending its decision in *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 165537, 165538, and 165964), our Supreme Court vacated this Court's opinion and remanded for reconsideration, stating:

> By order of July 2, 2024, the application for leave to appeal the February 1, 2024 judgment of the Court of Appeals was held in abeyance pending the decisions in *C-Spine Orthopedics, PLLC v Progressive Michigan Ins Co* (Docket Nos. 165537-8) and *Wallace v Suburban Mobility Auth for Regional Transp* (Docket No. 165964). On order of the Court, the cases having been decided on July 3, 2025, ___ Mich ___ (2025), the application is again considered. Pursuant to MCR 7.305(I)(1), in lieu of granting leave to appeal, we VACATE the judgment of the Court of Appeals and REMAND this case to that court for reconsideration in

light of *C-Spine Orthopedics* and *Wallace*. [*Hammock v Farm Bureau Mut Ins Co*, ___ Mich ___; 25 NW3d 336 (2025).]

We now address this matter on remand.

## II. ANALYSIS

C-Spine argues that it retained the right to pursue PIP benefits under MCL 500.3112 despite assigning its accounts receivable to factoring companies. C-Spine alternatively argues that any real-party-in-interest defect was cured by counter-assignments returning the claims to C-Spine. We reject the contention that C-Spine remained the real party in interest when suit was filed, but agree that the counter-assignments could restore C-Spine's status, subject to proper procedural action in the trial court.

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We likewise review de novo questions of law, including whether a party is the real party in interest under MCR 2.201(B)(1). *C-Spine Orthopedics*, ___ Mich at ___; slip op at 17.

C-Spine first contends that it retained the right to pursue payment of PIP benefits under MCL 500.3112, notwithstanding its assignments of accounts receivable to third-party factoring companies. We are not persuaded by C-Spine's argument on this point. Although MCL 500.3112 confers statutory standing on medical providers to bring a direct action against an insurer for unpaid PIP benefits, standing alone does not resolve whether a party is the real party in interest. *C-Spine Orthopedics*, ___ Mich at ___; slip op at 17-20; *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). The real-party-in-interest requirement, derived from MCL 600.2041 and MCR 2.201(B)(1), mandates that an action be prosecuted in the name of the party who possesses the substantive right being asserted and serves to protect defendants from multiple suits for the same claim. *Kearns v Mich Iron & Coke Co*, 340 Mich 577, 581; 66 NW2d 230 (1954).[1] In other words, statutory standing addresses whether a class of plaintiffs is authorized by statute to bring a claim in the abstract, while the real-party-in-interest requirement concerns whether the particular plaintiff before the court possesses the substantive right being asserted in the litigation. *Lansing Sch Ed Ass'n*, 487 Mich at 372. Accordingly, a plaintiff may have statutory standing to sue under MCL 500.3112 but nevertheless fail to qualify as the real party in interest if it has transferred away its ownership of the claim through assignment. *C-Spine Orthopedics*, ___ Mich at ___; slip op at 17-20.

---

[1] Our Supreme Court's decision in *Wallace v Suburban Mobility Auth for Regional Transp*, ___ Mich ___; ___ NW3d ___ (2025), which was consolidated with *C-Spine Orthopedics*, reinforces this distinction. In *Wallace*, our Supreme Court reaffirmed that statutory standing does not obviate the requirement that an action be prosecuted by the party possessing the substantive right at issue, and that defects in real-party-in-interest status are subject to correction only through appropriate action within the litigation. *Id*. at ___; slip op at 33. Accordingly, *Wallace* confirms that C-Spine's statutory standing under MCL 500.3112 does not, standing alone, resolve whether it was the real party in interest when this action was commenced. *Id*.

As noted, C-Spine assigned its accounts receivable to certain factoring companies. An assignment transfers the assignor's rights or interests to the assignee. *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 284; 983 NW2d 401 (2022). A party that has fully assigned its rights generally may not thereafter maintain an action to enforce them. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 201; 920 NW2d 148 (2018). While Michigan law permits limited assignments, the dispositive inquiry in this matter is not what a plaintiff could have done, but what it actually did. *C-Spine Orthopedics*, ___ Mich at ___; slip op at 29-30. Here, the plain language of the bulk purchase agreements demonstrates that C-Spine did not merely assign proceeds or accounts receivable while retaining litigation authority. Instead, it agreed to "sell, transfer, assign, and convey" its "legal and equitable rights and interests" in the accounts. It also expressly transferred its "Rights, Title, and Interest" to the factoring companies. Nothing in the agreements preserved C-Spine's authority to litigate the claims for its own benefit, and several provisions instead contemplated enforcement by the factoring companies themselves. Thus, as was the case in *C-Spine Orthopedics*, C-Spine fully assigned away its rights and was not the real party in interest at the time it filed suit, notwithstanding its statutory standing under MCL 500.3112. *C-Spine Orthopedics*, ___ Mich at ___; slip op at 30-31.

C-Spine alternatively argues that any real-party-in-interest defect was cured by counter-assignments and amended agreements executed with the factoring companies. We agree to a limited extent. Counter-assignments may restore a plaintiff's real-party-in-interest status by returning the right to litigate or by clarifying that the plaintiff possessed that authority. *C-Spine Orthopedics*, ___ Mich at ___; slip op at 32. However, a real-party-in-interest defect cannot be cured by unilateral, out-of-court action alone. *Id*. at ___; slip op at 23, 32. Rather, a plaintiff must take some action within the litigation, such as amending the complaint, substituting or joining the proper party, or otherwise invoking the court's authority, so that the trial court may assess the legal effect of the asserted cure. *Id*.; see also MCR 2.201(B)(2). Since the burden of establishing that a real-party-in-interest defect has been properly cured rests with the plaintiff, see *C-Spine Orthopedics*, ___ Mich at ___; slip op at 23, 32, C-Spine must demonstrate that the counter-assignments were legally effective to restore its right to litigate the claims, and that it took appropriate procedural action within the litigation to invoke the trial court's authority to recognize that cure.[2] See MCR 2.201(B)(2). Such procedural action is necessary to permit the trial court to determine whether any correction relates back to the filing of the original complaint under MCR 2.118(D), or whether the claim is barred by the one-year-back rule governing recovery of PIP benefits. See MCL 500.3145(2); *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 203; 815 NW2d 412 (2012). Because the trial court resolved this matter solely through the lens of standing and did not consider whether C-Spine could cure the real-party-in-interest defect through appropriate procedural mechanisms, remand is required.

---

[2] We emphasize that the availability of such procedural mechanisms does not mean that any particular attempt to cure will be legally effective. Rather, C-Spine bears the burden of demonstrating that the proposed cure satisfies MCR 2.201(B)(2) and restores its authority to litigate the claim at issue. *C-Spine Orthopedics*, ___ Mich at ___; slip op at 23, 32.

III. CONCLUSION

We vacate the trial court's order granting summary disposition and remand for further proceedings consistent with this opinion and our Supreme Court's decision in *C-Spine Orthopedics*. On remand, the parties may raise issues not previously addressed by the trial court, including whether C-Spine may file amended complaints under MCR 2.118 and the effect, if any, of MCL 500.3145 on the claims at issue. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Sima G. Patel
/s/ Kristina Robinson Garrett